IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION; METCO BATTERY TECHNOLOGIES, LLC; AC (MACAO COMMERCIAL OFFSHORE) LIMITED; and TECHTRONIC INDUSTRIES CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> RICHPOWER INDUSTRIES, INC. (Case 2:14-cv-01286-JPS); HILTI, INC. (Case 2:14-cv-01288-JPS); CHEVRON NORTH AMERICA, INC. (Case 2:14-cv-01289-JPS); SUNRISE GLOBAL MARKETING, LLC (Case 2:14-cv-01290-JPS); MAX USA CORP. (Case 2:14-cv-01292-JPS); TOOLTECHNIC SYSTEMS, LLC (Case 2:14-cv-01294-JPS); and POSITEC TOOL CORPORATION and POSITEC USA, INC. (Case 2:14-cv-01295-JPS), <br><br> Defendants. | Case 2:14-cv-01286-JPS <br> Case 2:14-cv-01288-JPS <br> Case 2:14-cv-01289-JPS <br> Case 2:14-cv-01290-JPS <br> Case 2:14-cv-01292-JPS <br> Case 2:14-cv-01294-JPS <br> Case 2:14-cv-01295-JPS |

## SNAP-ON'S REPLY IN SUPPORT OF
## ITS MOTION TO DISQUALIFY DLA PIPER

Plaintiffs do not dispute that DLA Piper LLP (US) has represented Snap-on Incorporated for approximately two decades, privy to its litigation strategies and confidences throughout. Plaintiffs do not dispute that DLA Piper serves as lead counsel for them in seven of eight lawsuits asserting infringement of three related patents by the defendants' handheld cordless power tools (the eighth of which is against Snap-on). And the Court recently (and appropriately) coordinated all eight cases and placed them on identical schedules, including a single final pretrial conference and a single trial. Nor do Plaintiffs dispute that Gen. L. R. 83(d) requires DLA Piper to comply with the Wisconsin Rules of Professional Conduct. The question presented

by Snap-on's motion is whether DLA Piper can realistically participate in these coordinated cases and not be directly adverse to its client Snap-on under SCR 20:1.7.

Plaintiffs' opposition clings to three things, none of which matter to the proper resolution of Snap-on's motion. *First*, Plaintiffs stress that DLA Piper is not representing them in their case against Snap-on and therefore is not directly adverse to Snap-on. (Pls.' Opp'n 4–12.) *Second*, Plaintiffs (in a paragraph) assert that consolidation does not require disqualification of DLA Piper because consolidation does not merge the eight cases into one. (*Id.* at 12–13.) Both of these points rely too heavily on the legal fiction that Plaintiffs have eight distinct lawsuits, only one of which is against Snap-on. The reality (and not a subtly hidden one) is that Plaintiffs sued eight defendants for patent infringement on the *same* patents in the *same* court at the *same* time. The coordination of the lawsuits (the Court has not yet consolidated them), and the joint nature of the proceedings that will result, was inevitable, and it will put DLA Piper in a position where it will be directly adverse to Snap-on. *Finally*, Plaintiffs argue that disqualification is not required because DLA Piper's patent-infringement litigators have been screened off from the trademark lawyers servicing Snap-on. (*Id.* at 13.) Even if screening DLA Piper could mitigate the conflict (and it cannot), this pays mere lip service to the duty of loyalty owed to Snap-on by DLA Piper, which is the sine qua non of the current-client conflict rules.

**I.     DLA Piper Is Directly Adverse to Snap-on in the Coordinated Patent-Infringement Litigation Commenced by Plaintiffs.**

Plaintiffs would have this Court believe that this is a positional-conflicts case. (*See* Pls.' Opp'n 11–12 (arguing that lawyers can take positions on behalf of one client that are adverse to other clients in other cases).) But this is not a case in which DLA Piper is litigating a patent-infringement matter on behalf of a client and Snap-on is uncomfortable with the position taken by DLA Piper's client. Far from it. DLA Piper's clients sued Snap-on and seven other defendants

2

QB\33673052.1
Case 2:14-cv-01292-JPS   Filed 03/06/15   Page 2 of 10   Document 31

on the same day in the same court, and on the same patents. Unsurprisingly, Plaintiffs identified the other seven cases as related to the one against Snap-on, ensuring that all eight cases would end up before this Court and with joint and coordinated (if not consolidated) proceedings. Having structured their patent-infringement lawsuit thus, Plaintiffs cannot employ, as part of their team of counsel (which includes two other fully capable law firms), lawyers who currently represent Snap-on.

### A. When Courts Have Faced Situations Like the One Created by Plaintiffs in This Case, They Have Disqualified Conflicted Counsel.

Plaintiffs cite three cases that they say should guide the Court in this matter, but all three are flawed or inapplicable in this case. The first of these cases is *Sumitomo Corp. v. J.P. Morgan & Co.*, which denied a motion by one of the defendants (Chase Manhattan Bank) to disqualify counsel for Sumitomo Corporation. Nos. 99 Civ. 8780(JSM), 99 Civ. 4004(JSM), 2000 WL 145747, at *5 (S.D.N.Y. Feb. 8, 2000). *Sumitomo* is not persuasive because it was decided under the law of the Second Circuit, which disqualifies counsel "only if there is a significant risk that an attorney's conduct will taint the trial." *Id.* at *3. In this Court, however, when an attorney breaches his or her duty of loyalty to a client—as DLA Piper is doing in this case—the appropriate remedy is disqualification. *See Lyman v. St. Jude Med. S.C.*, 423 F. Supp. 2d 902, 907 (E.D. Wis. 2006). Moreover, the *Sumitomo* court distinguished the situation before it from one in which an attorney "was actively involved in attempting to establish wrongdoing by the current client" or seeking a "judgment that would have a direct impact on the current client." *Id.* at *5. And that is this case. As explained below, DLA Piper will be involved in proceedings (e.g., claim construction) the purpose of which will be to establish wrongdoing of the defendants in the coordinated actions, including Snap-on.

3

The second case relied upon by Plaintiffs is *Multimedia Patent Trust v. Apple Inc.*, which denied a motion by a defendant in one case (DirecTV) to disqualify counsel for the plaintiff in a second, unrelated case. No. 10-CV-2618 H(CAB), 2011 WL 1636928, at *4 (S.D. Cal. Apr. 29, 2011). But the *MPT* case *was* a positional-conflict case, because DirecTV was complaining about positions its counsel was taking in another case that were relevant to the case against DirecTV but not directly adverse to DirecTV. *Id.* at *2. Importantly, there was no consolidation or coordination, and there were no joint proceedings on common issues such as claim construction; indeed, DirecTV's litigation of those issues was likely to proceed *before* the allegedly conflicted counsel would take adverse positions in the second case. *Id.* at *4. In this case, however, there will be joint discovery and proceedings, which will place DLA Piper directly adverse to Snap-on.

The third—and final—case on which Plaintiffs rely is *Enzo Biochem, Inc. v. Applera Corp.*, which denied a motion to disqualify counsel in an unrelated action before a different court. 468 F. Supp. 2d 359, 368 (D. Conn. 2007). Like *MPT*—and unlike here—the relevant cases were filed at different times. *Id.* at 360. They were filed in different district courts, and they were clearly not part of a coordinated scheme, far different than Plaintiffs' strategy here. *See id.* at 360–61. Like *Sumitomo—*and unlike here—the court was burdened by the Second Circuit's focus on whether the conflict taints the trial. *Id.* at 364. Moreover, the court saw the two cases as independent of each other. *Id.* at 367. In this case, by contrast, Plaintiffs' case against Snap-on is not independent of their cases against the other seven defendants.

To the contrary, Plaintiffs' strategy of litigating coordinated patent-infringement actions at the same time and before the same Court against multiple defendants (one of which is Snap-on) will pit DLA Piper against its client Snap-on. Indeed, this is why the cases on which Snap-on

relied in its motion—which Plaintiffs weakly attempt to distinguish[*]—are better guides to the Court in this case. In *Rembrandt Technologies, LP v. Comcast Corp.*, the court distinguished *Enzo Biochem* (one of Plaintiffs' cases) because, like here, the plaintiff "filed its cases in the same district," the relevant cases were "pending before the same judge at roughly the same time," and positions taken by the plaintiff in one case "could, as a practical matter," cause prejudice in the other case. Civ. Action No. 2:05CV443, 2007 WL 470631, at *4 (E.D. Tex. Feb. 8, 2007). In *Arrowpac, Inc. v. Sea Star Line, LLC*, the court declined to follow *Sumitomo* (another of Plaintiffs' cases), observing that—as in this case—the party trying to use allegedly conflicted counsel would advance similar (if not identical) positions in each of the related cases, and counsel in DLA Piper's position would encounter significant difficulties in participating in joint discovery, such as depositions of Plaintiffs' principals. Nos. 2:12-cv-1180-J-32JBT, 3:12-cv-1181-J-32JBT, 3:12-cv-1182-J-32JRK, 3:12-cv-1183-J-32MCR, 2013 WL 5460027, at *10–12 (M.D. Fla. Apr. 30, 2013). Indeed, in *Celgard, LLC v. LG Chem, Ltd.*, the Federal Circuit applied similar reasoning to disqualify lawyers who were adverse to the client's supplier. Nos. 2014-1675, 2014-1733, 2014-1806, 2014 WL 7691765, at *1–3 (Fed. Cir. Dec. 10, 2014).

In *Rembrandt*, *Arrowpac*, and *Celgard*, the courts discerned the reality of complex patent-infringement litigation and understood that where a patentee seeks to impose infringement liability against defendants on the same patents in the coordinated proceedings, direct adversity results and disqualification is appropriate.

---

[*] Plaintiffs say they are distinguishable because they found direct adversity (Pls.' Opp'n 8), but that just begs the question as to *why* the courts in those cases found direct adversity.

5

### B. Coordination of Plaintiffs' Cases Places DLA Piper in Direct Adversity With Snap-on.

Plaintiffs argue that coordination is no big deal, because each of their eight cases retains its distinct identity following coordination. (Pls.' Opp'n 12.) This simplistic argument ignores the substantial overlap of the cases and the adversity present at every turn. Indeed, it would be naïve to think that coordination will not put DLA Piper in a position of direct adversity to Snap-on.

Plaintiffs understood well the related nature of the eight cases they filed in October. They filed them in the same court. They claimed related-status for the cases, which resulted (as it should) in all eight cases being in front of the same judge. They sought (appropriately) consolidation because of the efficiencies that it would foster. Indeed,

> Plaintiffs proposed that the Court consolidate the Related Cases under Rule 42, Fed. R. Civ. P., for the purposes of all claim construction proceedings, including fact and expert discovery regarding claim construction, claim construction briefing, and any *Markman* hearing and order, and all proceedings related to the validity or enforceability of any of the patents in suit, including fact and expert discovery on those topics including discovery of the inventors, and any full or partial dispositive motions on those topics.

(Jt. R. 26(f) Rep. 3.) Putting aside issues of infringement—on which Plaintiffs focus in their opposition—the twin issues of claim construction and validity, neither of which is unimportant will be litigated on a coordinated (if not consolidated) basis. As a result, in those activities, DLA Piper will be representing Plaintiffs (i.e., propounding discovery, responding to discovery, defending depositions, engaging in oral advocacy) in situations where Snap-on will be on the other side. That results in direct adversity.

The substantial overlap in the eight cases on issues about remedies (which Plaintiffs ignore) also puts DLA Piper directly adverse to Snap-on. Common damages-related issues will arise under many of the fifteen *Georgia-Pacific* factors, and whether to issue a permanent

injunction (should infringement be found) will put before the Court nearly identical issues in all eight cases.

As for infringement, suffice it to say that Plaintiffs have not dropped their "*de facto* industry standard" allegation from any of the eight complaints. This means that Plaintiffs allege that the defendants in all eight cases practice this so-called "*de facto* industry standard." As a result, infringement in each case will boil down to the same issue—whether the alleged "*de facto* industry standard" is, in fact, an infringement of the patents-in-suit.

If it were not so serious, it would be comical to watch DLA Piper attempt to navigate the coordinated discovery that Plaintiffs proposed. The *Arrowpac* court captured it best when it described what will occur when Plaintiffs' witnesses are deposed:

> So, in other words, [DLA Piper] would be responsible for participating and objecting on behalf of [Plaintiffs' witness] for about [seven eighths] of the deposition (during questioning by all [defendants] except [Snap-on]), while the other [eighth] (questioning by [Snap-on]) would be handled by another law firm. One can only imagine how complicated the rest of the discovery would be under such circumstances.

*See* 2013 WL 5460027, at *11. In addition to the logistical issues, the *Arrowpac* court observed correctly that it would be next-to-impossible for Plaintiffs to assure—with coordinated efforts— that the conflicted law firm (DLA Piper, in this case) did not contribute to work product adverse to Snap-on. For example, Plaintiffs will probably have experts for the validity of their patents. Are they going to offer one expert against seven defendants (prepared by DLA Piper) and another against Snap-on (prepared by another law firm)? Unlikely. And even if they *did*, the presence of the same local counsel in all eight cases and the presence of Plaintiffs' in-house counsel at the hub creates substantial risk—if not inevitability—that DLA Piper cannot be segregated fully from the case against Snap-on. *See id.* (discussing how non-conflicted counsel could not ignore work product of conflicted counsel).

If Plaintiffs wanted DLA Piper to handle the infringement suits brought in October, they could have avoided suing Snap-on. Conversely, if Plaintiffs wanted to include Snap-on in their lawsuits, they could have used lawyers who do not represent Snap-on. They did neither and, instead, named DLA Piper as counsel in all suits but the one against Snap-on. But the coordination of the cases rendered the distinction between what Plaintiffs call "the DLA Piper Cases" and the case against Snap-on illusory.

## II. Whatever Screens DLA Piper Erects, They Cannot Mitigate DLA Piper's Breach of the Duty of Loyalty It Owes Snap-on.

As a final effort to avoid disqualification, Plaintiffs attempt to use a screening restriction imposed at DLA Piper as a shield. (Pls.' Opp'n 13.) But this argument fails for two reasons.

*First*, as DLA Piper's declarants confirm, the screening restriction was not timely imposed. Importantly, DLA Piper did not erect the screen in 2013 when it decided to participate in Plaintiffs' infringement litigation against Snap-on and others. It was imposed about a year later and only after *Snap-on* complained to its lawyers at DLA Piper about the firm's breach of its duty of loyalty in late July 2014.

*Second*, whatever impact a screen has on a SCR 20:1.9 *former*-client conflict—where the critical issue is whether confidential information from the former client is used on behalf of the current client—Plaintiffs provide no authority for the proposition that a screen can mitigate the impact on a SCR 20:1.7 current-client conflict. *See Cromley v. Bd. of Educ.*, 17 F.3d 1059, 1063 (7th Cir. 1994) (plaintiff's lawyer terminated representation and joined firm serving as counsel to defendant); *Schiessle v. Stephens*, 717 F.2d 417, 420–21 (7th Cir. 1983) (applying former-client conflict analysis); *Silicon Graphics, Inc. v. ATI Techs., Inc.*, 741 F. Supp. 2d 970, 972–73 (W.D. Wis. 2010) (lawyer left firm representing plaintiff and joined firm representing defendant). The central issue on this motion is not whether DLA Piper will use information it knows about Snap-

8

QB\33673052.1

Case 2:14-cv-01292-JPS   Filed 03/06/15   Page 8 of 10   Document 31

on against Snap-on. It is whether Snap-on can expect—as any client should—that its lawyer will not be across the table from it in an adversarial proceeding. Under SCR 20:1.7, no screen can repair such a breach of the duty of loyalty.

## CONCLUSION

For the foregoing reasons, and those presented in its opening brief, Snap-on urges the Court to disqualify DLA Piper from representing Plaintiffs in any of the now-coordinated actions they filed in October 2014.

Dated: March 6, 2015

Respectfully submitted,

 /s/ David R. Cross

| | |
|---|---|
| Paul Devinsky (pdevinsky@mwe.com) | David R. Cross (david.cross@quarles.com) |
| McDermott Will & Emery LLP | Michael T. Piery (Michael.piery@quarles.com) |
| The McDermott Building | Quarles & Brady LLP |
| 500 North Capitol Street, Northwest | 411 East Wisconsin Avenue, Suite 2350 |
| Washington, District of Columbia 20001 | Milwaukee, Wisconsin 53202-4426 |
| 202.756.8000 | 414.277.5000 |
| 202.756.8087 fax | 414.271.3552 fax |

Joseph H. Paquin, Jr. (jpaquin@mwe.com)
Amol A. Parikh (amparikh@mwe.com)
McDermott Will & Emery LLP
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606
312.372.2000
312.984.7700 fax

*Attorneys for Snap-on Incorporated*

# CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2015, I electronically filed the foregoing **Snap-on's Reply in Support of Its Motion To Disqualify DLA Piper** using the ECF system, which will send notification of such filing by operation of the Court's electronic filing system to all counsel of record.

/s/ David R. Cross
David R. Cross (david.cross@quarles.com)
Quarles & Brady LLP
411 East Wisconsin Avenue, Suite 2350
Milwaukee, Wisconsin 53202-4426
414.277.5000
414.271.3552 fax

*Attorney for Snap-on Incorporated*